UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
Case No.:

BRIDGETTE HART,                    )
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   )
LIL' STARS LEARNING CENTER,        )
INC.,                              )
                                   )
            Defendant.             )

## COMPLAINT

Plaintiff, Bridgette Hart ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Defendant Lil' Stars Learning Center, Inc. ("Defendant"), and alleges as follows:

## NATURE OF THE ACTION

This is a civil action for damages, declaratory relief, injunctive relief, and all other appropriate remedies arising from Defendant's unlawful employment practices in violation of federal and Florida law. Plaintiff brings this action pursuant to Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq.; the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01 et seq.; and the Florida Private Sector Whistleblower Act ("FWA"), Fla. Stat. §§ 448.101–448.105.

Plaintiff seeks redress for Defendant's discriminatory and retaliatory conduct, including disparate treatment and termination based on Plaintiff's

1

disability as a person with Type 1 Diabetes, retaliation for engaging in protected activity when she disclosed her disability and raised regulatory and safety compliance concerns with management, and retaliation for objecting to Defendant's unlawful workplace practices.

Defendant's actions, including ignoring Plaintiff's repeated disclosures that working conditions were causing dangerous blood sugar episodes, threatening Plaintiff's employment when she raised health and safety concerns, and terminating Plaintiff immediately upon her return from illness-related absences, constitute unlawful disability discrimination and retaliation under federal and state law.

Plaintiff seeks all relief available under the ADA, the FCRA, and the Florida Private Sector Whistleblower Act, including back pay, front pay or reinstatement, compensatory damages, emotional distress damages, declaratory and injunctive relief, restoration of lost benefits, prejudgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## PARTIES

1.　At all times material, Plaintiff, Bridgette Hart, is an adult female and a resident of Pasco County, Florida.

2.　At all times material, Plaintiff was employed by Defendant as a Center Director at Defendant's childcare facility located at 5034 18th Street, Zephyrhills, Florida 33542.

3.     At all times material, Plaintiff was a "person," "aggrieved person," and "employee" as those terms are defined under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111(4), and the Florida Civil Rights Act, Fla. Stat. § 760.02.

4.     At all times material, Plaintiff was an individual with a disability within the meaning of the ADA and the FCRA, in that she has Type 1 Diabetes, a physical impairment that substantially limits one or more major life activities and major bodily functions, including the functions of the immune system, the endocrine system, and the circulatory, neurological, and respiratory systems, and therefore Plaintiff is a member of a protected class because of her disability, Type 1 Diabetes.

5.     At all times material, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position as Center Director.

6.     Defendant Lil' Stars Learning Center, Inc. is a Florida profit corporation with its principal place of business at 5034 18th Street, Zephyrhills, Florida 33542.

7.     At all times material, Defendant was engaged in an industry affecting commerce and employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, through its operation of multiple childcare facilities in

the San Antonio–Dade City–Zephyrhills area of Pasco County, Florida under common ownership and management.

8.     At all times material, Defendant was a "person" and an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), the FCRA, Fla. Stat. § 760.02, and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.101(2).

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3)–(4), as this action arises under the laws of the United States prohibiting discrimination in employment on the basis of disability, including the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq.

10.     This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with her federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to these claims occurred in whole or in part in Pasco County, Florida, where Defendant conducts business, resides for venue purposes, and maintained Plaintiff's employment records.

## CONDITIONS PRECEDENT

12.    The Plaintiff has complied with all conditions precedent in filing this action, to wit:

    a.  The Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Tampa Field Office (Charge No. 511-2026-01943);

    b.  The charge was dual filed with the Florida Commission on Human Relations (FCHR) under Fla. Stat. § 760.10.

    c.  On or about March 27, 2026, the EEOC issued a Notice of Right to Sue, authorizing Plaintiff to commence a civil action in federal court.

    d.  This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of that Notice.

13.    Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14.    Bridgette Hart ("Plaintiff") is an individual with a disability as a person with Type 1 Diabetes, a condition that affects the immune, endocrine, circulatory, neurological, and respiratory systems and requires her to manage her blood glucose levels continuously through the use of an insulin pump and a continuous glucose monitor, both worn visibly on her upper arms at all times.

15.  Plaintiff began her employment with Defendant as Center Director on September 15, 2025, and remained employed until her termination on January 23, 2026.

16.  During all relevant times Plaintiff performed her job satisfactorily or above satisfaction.

17.  The Plaintiff was and is qualified for her position while working for the Defendant.

18.  Plaintiff disclosed her Type 1 Diabetes to Defendant's management on multiple occasions, including but not limited to on or about October 2, 2025, during a CPR and First Aid training class held at Defendant's Innovation location and attended by Kerrie Specht ("Specht"), a Senior Director over two of Defendant's locations, and on or about October 16, 2025, during two separate and private meetings with Angela Kinnamon ("Kinnamon"), a Senior Director at Defendant's All Aboard Christian Academy location, and, once again, to Specht. Thus, at all times thereafter, both Kinnamon and Specht were aware of Plaintiff's disability.

19.  Shortly after beginning her employment, Plaintiff identified and reported to management several safety, security, and regulatory compliance concerns at Defendant's Zephyrhills facility.

20.  These concerns included:

a.  Insufficient exterior lighting for early morning and evening arrivals and departures;

b.  an unsecured building entry code that had not been changed since it was issued to former employees and parents;

c.  the absence of exterior security cameras, the presence of significant amounts of cash on the premises;

d.  concerns regarding statements made to the Fire Marshal about the facility's use of its stove during a licensing inspection, including management's explanation for representing that the stove was not in use;

e.  violations of DCF adult-to-child ratio requirements mandated by Chapter 65C-22, Florida Administrative Code; and

f.  concerns about a provision in Defendant's employee handbook that prohibited employees from discussing their wages, a practice she identified as unlawful.

21.    Rather than addressing Plaintiff's safety and compliance concerns constructively, Defendant's management responded with threats. On or about October 27, 2025, William Gerrell, one of Defendant's owners, came to the facility, threatened to fire Plaintiff effective immediately if she did not retract her statements about quality and safety standards, and demanded that she do things the way Defendant preferred. Before leaving, he repeated the threat of immediate

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

termination and asked Plaintiff how she was feeling. Plaintiff declined to retract her concerns.

22.    Throughout Plaintiff's employment, the demands of the Center Director role made it increasingly difficult for Plaintiff to manage her Type 1 Diabetes. Plaintiff was routinely expected to maintain state-required classroom ratios, which required her to be physically present in classrooms while simultaneously managing center operations, increasing enrollment, completing documentation, handling finances, and performing administrative duties, all without adequate staffing support.

23.    As a result of these staffing deficiencies and operational demands, Plaintiff frequently worked extended hours before and after normal operating hours in an effort to complete required tasks, maintain required ratios, and address ongoing staffing shortages.

24.    Between November 2025 and January 2026, Plaintiff was required to take leave from work to attend medical appointments for herself and her son, related to a gastroenterology appointment, Plaintiff's own medical appointments for pain management and medical evaluation, and her son's major surgery resulting in an ileostomy. When Plaintiff attended these medical appointments, she remained in communication with center staff and continued participating in operational and management decisions, which was a form of remote supervision that had been permitted to her as the Director, as was communicated to her at the

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

time of hiring. Nevertheless, each time Plaintiff took leave to attend her medical appointments, Defendant subjected Plaintiff to increased scrutiny and retaliatory conduct, including:

    a.  repeated inquiries regarding her whereabouts;

    b.  unannounced visits to the center;

    c.  additional attendance-related directives;

    d.  criticism concerning her time away from work; and

    e.  upon Plaintiff's return following her November 25, 2025, absence, Kinnamon appeared at the center and questioned Plaintiff regarding her absence, stating that Plaintiff "had to be here", despite Plaintiff having arranged coverage and remained available to staff throughout the day.

25.    Plaintiff made repeated informal requests for reasonable accommodation of her disability. Specifically, on or about January 14, 2026, and on other occasions during her employment, Plaintiff informed Defendant's management, including Kinnamon, that staffing shortages were causing dangerous blood sugar fluctuations and making it difficult for her to safely manage her diabetes, and that Defendant needed to hire additional staff. Plaintiff also requested periodic breaks for blood glucose monitoring, medically necessary meal breaks, and treatment of diabetic episodes.

26.     Despite Plaintiff's repeated informal requests, Defendant failed to engage in the interactive process. Kinnamon ignored Plaintiff's requests and took no steps to identify or implement reasonable accommodations. Defendant's prior hostility toward Plaintiff's workplace concerns, including the October 27, 2025 threat of immediate termination by Defendant's owner, further deterred Plaintiff from pursuing additional formal accommodation procedures, as she reasonably feared that doing so would result in further retaliation.

27.     Plaintiff did not submit a formal request for accommodation because she reasonably believed Defendant was already aware of her diabetic condition and the need for periodic blood glucose monitoring, meal breaks, and treatment of diabetic episodes. Moreover, after management threatened her employment for raising workplace concerns, Plaintiff feared additional negative consequences from requesting further accommodations.

28.     The stress of the deteriorating work environment worsened Plaintiff's medical condition and Plaintiff became ill on January 21, 2026. Due to chest pain, tightness, and worsening respiratory symptoms, including shortness of breath, Plaintiff went to the emergency room on the evening of January 21, 2026. The emergency room physicians were informed of Plaintiff's chronic illness history, including her Type 1 Diabetes, and her discharge paperwork reflected her presenting symptoms, including unspecified chest pain, in the context of her diabetic condition.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

29. As a result of her emergent medical condition, Plaintiff was absent on January 21 and January 22, 2026.

30. On or about January 21 and 22, 2026, Plaintiff informed Kinnamon and Specht through text messages about her emergency room visit and her expected return. Specht requested that Plaintiff obtain a doctor's note.

31. Plaintiff returned to work on January 23, 2026, with her ER discharge paperwork available and in hand as documentation of her illness and emergency room visit. Neither Kinnamon nor Specht asked to see the note or documentation upon Plaintiff's return.

32. Rather, upon Plaintiff's return to work on January 23, 2026, Kinnamon and Specht immediately terminated Plaintiff's employment.

33. The reasons communicated to Plaintiff at termination included false accusations, including but not limited to alleged insubordination, allegations that Plaintiff was never at work, allegations that Plaintiff had been sleeping in the infant room, and concerns about her absences for her son's surgery and her own illness.

34. Throughout Plaintiff's employment, Defendant's management directed hostility and adverse conduct toward Plaintiff specifically because of her disability. This disability-targeted conduct included, but was not limited to, the following:

a.  On or about October 27, 2025, Defendant's owner, William Gerrell, threatened to terminate Plaintiff effective immediately if she did not retract her concerns about workplace conditions, and before leaving, pointedly asked Plaintiff "how she was feeling," a comment directed at Plaintiff's known diabetic condition and intended to intimidate her into silence about the impact of working conditions on her health;

b.  On or about November 25, 2025, upon Plaintiff's return from a medical absence during which she had arranged coverage and remained available to staff, Kinnamon appeared at the center and told Plaintiff she "had to be here," singling Plaintiff out for criticism of an absence taken for reasons related to her disability;

c.  At the time of Plaintiff's termination, Defendant accused Plaintiff of "sleeping in the infant room," when in fact any episode of drowsiness, fatigue, or disorientation observed by Defendant's staff was a direct and foreseeable symptom of Plaintiff's Type 1 Diabetes, a condition of which Defendant was fully aware, and Defendant's characterization of Plaintiff's diabetic episodes as misconduct rather than symptoms of a known disability reflects disability-based animus;

12

d. Following each of Plaintiff's disability-related absences, Defendant subjected Plaintiff to a pattern of heightened scrutiny, including repeated inquiries regarding her whereabouts, unannounced visits to the center, additional attendance-related directives, and criticism of her time away from work, while, upon information and belief, non-disabled employees who took absences were not subjected to the same treatment.

35. Each of the foregoing acts was directed at Plaintiff because of her disability, and the cumulative effect of this conduct was severe and pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive and hostile working environment.

36. At all times relevant, Defendant was aware of Plaintiff's severe diabetic medical condition, symptoms related to her condition, and necessary steps that needed to be taken in response to her symptoms.

37. Plaintiff disputes the accuracy and characterization of the stated reasons for her termination. Particularly, Plaintiff did not sleep at work, and Defendant was aware that she needed to take breaks due to her diabetic medical condition, which causes drowsiness, fatigue, and disorientation and which constitute medical emergencies requiring immediate treatment.

38. As set forth above, Plaintiff's medical leave during her employment, were attributable to legitimate medical or family medical needs. Moreover, during

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

Plaintiff's medical leave, Plaintiff remained in communication with the center staff and continued participating in operational and management decisions. Defendant's management was fully aware of Plaintiff's disability throughout her employment, including her need to manage her blood glucose levels under physically demanding working conditions.

39.     Prior to her termination, Plaintiff had not received any formal written disciplinary action, performance improvement plan, or written warning regarding her attendance, her conduct, or her management of staff.

40.     Upon information and belief, during the same period of Plaintiff's employment, non-disabled employees of Defendant took absences from work for personal, family, or medical reasons and were not subjected to the same level of scrutiny, criticism, unannounced visits, or attendance-related directives that Defendant imposed on Plaintiff. Upon information and belief, these non-disabled employees were permitted greater flexibility in their schedules and absences without threat of termination or other adverse consequences. Defendant treated Plaintiff less favorably than these similarly situated non-disabled employees because of her disability.

41.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered substantial damages, including lost wages, loss of employment benefits, emotional distress, anxiety, damage to her professional reputation, and financial hardship.

42.     As a result of Defendant's actions, Plaintiff continues to suffer economic harm, including ongoing loss of income, as well as emotional distress and reputational damage.

43.     Plaintiff has retained the undersigned counsel to protect her rights and interests and has become obligated to pay a reasonable attorney's fee.

## COUNT I: DISABILITY DISCRIMINATION
### (Disparate Treatment) – ADA

44.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 43 above as if set out in full herein.

45.     The Plaintiff's disability, Type 1 Diabetes, was a motivating factor that caused the Defendant to discriminate against the Plaintiff in the terms, conditions, and privileges of her employment, including by failing to address working conditions that Plaintiff disclosed were causing dangerous blood sugar episodes, and by terminating her employment immediately upon her return from illness-related absences.

46.     The Plaintiff sustained emotional suffering and injury attributable to the discrimination.

47.     The Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a.  Issue an order enjoining the Defendant to cease and desist from the conduct described in Count I of this Complaint and from discriminating against Plaintiff in any manner whatsoever.

b.  Issue an order requiring the Defendant to take steps to protect Plaintiff and other similarly situated employees from the type of conduct described in Count I of this Complaint, and from all other forms of disability discrimination in the future.

c.  Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of disability discrimination and taking suitable remedial action.

d.  Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to disability discrimination, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e.  Award the Plaintiff back pay, including pension benefits and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f.  Award the Plaintiff compensatory damages for her emotional suffering.

g.  Award the Plaintiff punitive damages.

h.  Award the Plaintiff attorneys' fees, including expert witness fees.

i.  Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT II: DISABILITY DISCRIMINATION
### (Retaliation) – ADA

48.  The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 43 above as if set out in full herein.

49.  The Plaintiff engaged in protected activity by disclosing her disability to Defendant's management; informing Defendant's management that

staffing shortages and working conditions were causing dangerous blood sugar fluctuations and impairing her ability to safely manage her Type 1 Diabetes; communicating with Defendant regarding her disability-related symptoms and medical treatment; and taking leave related to her disability and medical condition. Following such protected activity, Defendant subjected Plaintiff to increased scrutiny, criticism regarding her absences, and ultimately terminated her employment on January 23, 2026.

50.     The Defendant's stated reasons for Plaintiff's termination were false, pretextual, and a retaliatory response to Plaintiff's protected activity. As a direct and proximate result of Defendant's retaliation, Plaintiff sustained emotional suffering and injury.

51.     The Defendant acted with malice and with reckless indifference to Plaintiff's federally protected rights and to her emotional and physical well-being.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a. Issue an order enjoining the Defendant to cease and desist from the conduct described in Count II of this Complaint and from retaliating against the Plaintiff in any manner whatsoever.

b. Issue an order requiring the Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count II of this Complaint, and from all other forms of retaliation in the future.

c. Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from retaliation in the workplace and establishing reasonable and adequate procedures for investigating

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

complaints of disability discrimination and taking suitable remedial action.

d. Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to retaliation, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e. Award the Plaintiff back pay, including pension benefits and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f. Award the Plaintiff compensatory damages for her emotional suffering.

g. Award the Plaintiff punitive damages.

h. Award the Plaintiff attorneys' fees, including expert witness fees.

i. Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT III: DISABILITY DISCRIMINATION
### (Hostile Work Environment) – ADA

52. The Plaintiff re-adopts each and every factual allegation set forth in paragraphs 1 through 43 as though fully set forth herein.

53. Plaintiff is an individual with a disability, namely Type 1 Diabetes, and is a member of a class protected under the Americans with Disabilities Act.

54. Throughout her employment, Defendant subjected Plaintiff to unwelcome conduct directed at her because of her disability, including: threatening Plaintiff with immediate termination and making pointed inquiries about her health when she raised concerns about the impact of working conditions on her diabetic condition; criticizing and penalizing Plaintiff for disability-related absences by telling her she "had to be here," despite Plaintiff

18

having arranged staff coverage and remained available; falsely accusing Plaintiff of "sleeping in the infant room" when the conduct Defendant observed was attributable to symptoms of Plaintiff's Type 1 Diabetes, including drowsiness, fatigue, and disorientation, of which Defendant was fully aware; subjecting Plaintiff to a pattern of heightened scrutiny following each disability-related absence, including unannounced visits, repeated inquiries regarding her whereabouts, and attendance-related directives not imposed on non-disabled employees; and ultimately terminating Plaintiff's employment immediately upon her return from an emergency room visit caused in part by her diabetic condition.

55.    This conduct was not merely a failure to accommodate Plaintiff's disability. Each act reflected hostility directed at Plaintiff because of her disability and Defendant's unwillingness to employ an individual whose known medical condition required periodic medical attention and occasional absence.

56.    The harassment described above was sufficiently severe or pervasive, both individually and cumulatively, to alter the terms and conditions of Plaintiff's employment and create an objectively and subjectively abusive working environment.

57.    Defendant knew or should have known of the hostile conditions because Plaintiff repeatedly disclosed her disability and informed management that working conditions were exacerbating her diabetic episodes, yet Defendant

failed to take prompt or effective corrective action and instead escalated the hostile conduct.

58.     As a result of Defendant's conduct, Plaintiff was forced to choose between performing her job duties and attending to medical episodes that placed her at risk of seizures, loss of consciousness, and other serious health consequences.

59.     The conduct described above was unwelcome and was based upon Plaintiff's disability and Defendant's knowledge of the limitations imposed by that disability.

60.     Defendant's conduct unreasonably interfered with Plaintiff's ability to perform her job and adversely affected the terms, conditions, and privileges of her employment.

61.     The hostile work environment caused Plaintiff emotional distress, anxiety, humiliation, and other non-economic damages.

62.     Defendant acted with malice and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a. Enter judgment in the Plaintiff's favor and against the Defendant for its violations of the ADA;

b. Award the Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c. Award the Plaintiff compensatory damages under the ADA for embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered and continues to suffer;

d.  Award the Plaintiff liquidated damages based on the Defendant's willful and/or reckless conduct;

e.  Award the Plaintiff prejudgment interest on her damages award;

f.  Award the Plaintiff reasonable costs and attorneys' fees; and

g.  Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT IV: DISABILITY DISCRIMINATION
### (Failure to Accommodate) – ADA

63.  The Plaintiff re-adopts each and every factual allegation set forth in paragraphs 1 through 43 as though fully set forth herein.

64.  Plaintiff is a qualified individual with a disability, namely Type 1 Diabetes, within the meaning of the Americans with Disabilities Act.

65.  At all times material hereto, Defendant was aware of Plaintiff's disability and her need to safely monitor and treat her blood glucose levels while performing her job duties.

66.  During her employment, Plaintiff informed Defendant that ongoing staffing shortages and the demands of her position were causing dangerous blood sugar fluctuations and interfering with her ability to safely manage her disability.

67.  Plaintiff thereby requested accommodations that would permit her to safely perform the essential functions of her position, including adequate staffing and the ability to attend to medically necessary blood glucose monitoring and treatment.

68.   Defendant failed to engage in the interactive process in good faith and failed to make reasonable accommodations for Plaintiff's known disability.

69.   Defendant could have reasonably accommodated Plaintiff without imposing an undue hardship on its business operations.

70.   Rather than reasonably accommodating Plaintiff's disability, Defendant permitted the unsafe working conditions to continue and ultimately terminated Plaintiff's employment.

71.   As a direct and proximate result of Defendant's failure to accommodate, Plaintiff suffered lost wages, loss of employment benefits, emotional distress, mental anguish, and other compensatory damages.

72.   Defendant acted with malice and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.   Enter judgment in the Plaintiff's favor and against the Defendant for its violations of the ADA;

b.   Award the Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c.   Award the Plaintiff compensatory damages under the ADA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.   Award the Plaintiff prejudgment interest on her damages award;

e.   Award the Plaintiff reasonable costs and attorneys' fees; and

f.   Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT V: DISABILITY DISCRIMINATION
### (Disparate Treatment) – FCRA

73.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 43 above as if set out in full herein.

74.    At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

75.    The Plaintiff is an individual with a handicap within the meaning of the Florida Civil Rights Act, in that she has Type 1 Diabetes, a condition that substantially limits major life activities and major bodily functions.

76.    During the course of the Plaintiff's employment with the Defendant, the Plaintiff was subjected to discrimination because of her handicap, including Defendant's failure to respond to Plaintiff's reports that working conditions were causing dangerous blood sugar episodes and Defendant's termination of Plaintiff's employment immediately upon her return from illness-related absences, as more fully described in paragraphs 14 through 43 of this Complaint.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

77.    The discriminatory conduct referred to in paragraphs 14 through 43 of this Complaint was offensive to the Plaintiff and would be offensive to a reasonable person.

78.    The Plaintiff was and is qualified for her position while working for the Defendant.

79.    The Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of her handicap in the terms, conditions, and privileges of her employment.

80.    As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

81.    Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against her based on her handicap.

82.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

83.    The aforementioned actions of the Defendant were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

24
THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

b. Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of handicap.

d. Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law including attorneys' fees (§ 760.11(5));

g. Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h. Grant such other and further relief as the Court deems just and proper.

## COUNT VI: DISABILITY DISCRIMINATION
## (Retaliation) – FCRA

84.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 43 above as if set out in full herein.

85.     At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10(7), which provides that it is an unlawful employment practice for an employer "to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

86.     The Plaintiff is an individual with a handicap within the meaning of the Florida Civil Rights Act.

87.     During the course of the Plaintiff's employment with the Defendant, the Plaintiff engaged in protected activity by disclosing her disability to Defendant's management, raising concerns about how working conditions were exacerbating her diabetic condition, and taking absences related to her own medical needs and those of her family.

88.     Plaintiff's disclosures and related protected activity constitute an engagement in a protected activity under the FCRA.

89.     The discriminatory conduct referred to in paragraphs 14 through 43 of this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person.

90.     The Plaintiff was subjected to the retaliatory conduct referred to in paragraphs 14 through 43 of this Complaint because she engaged in protected activity. Specifically, Plaintiff repeatedly disclosed her disability to senior directors Angela Kinnamon and Kerrie Specht, informed management that working conditions were causing dangerous blood sugar episodes, and was terminated immediately upon returning from illness-related absences.

91.     The Plaintiff was and is qualified for her position while working for the Defendant.

92.    The Defendant violated the Florida Civil Rights Act by retaliating against the Plaintiff because of her protected activity.

93.    As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

94.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

95.    The aforementioned actions of the Defendant were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which retaliates on the basis of handicap.

d. Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law including attorney's fees (§ 760.11(5));

g. Award the Plaintiff costs of this action, including reasonable attorneys' fees;

27

h.  Grant such other and further relief, as the Court deems just and proper.

## COUNT VII: DISABILITY DISCRIMINATION
### (Hostile Work Environment) – FCRA

96.     Plaintiff re-alleges and incorporates paragraphs 1 through 43 as though fully set forth herein.

97.     During the course of her employment, Defendant subjected Plaintiff to unwelcome conduct directed at her because of her handicap, including: threatening Plaintiff with immediate termination and making pointed inquiries about her health when she raised concerns about the impact of working conditions on her diabetic condition; criticizing and penalizing Plaintiff for disability-related absences by telling her she "had to be here," despite Plaintiff having arranged staff coverage and remained available; falsely accusing Plaintiff of "sleeping in the infant room" when the conduct Defendant observed was attributable to symptoms of Plaintiff's Type 1 Diabetes, including drowsiness, fatigue, and disorientation, of which Defendant was fully aware; subjecting Plaintiff to a pattern of heightened scrutiny following each disability-related absence, including unannounced visits, repeated inquiries regarding her whereabouts, and attendance-related directives not imposed on non-disabled employees; and ultimately terminating Plaintiff's employment immediately upon her return from an emergency room visit caused in part by her diabetic condition.

98.     This conduct was not merely a failure to accommodate Plaintiff's handicap. Each act reflected hostility directed at Plaintiff because of her handicap and Defendant's unwillingness to employ an individual whose known medical condition required periodic medical attention and occasional absence.

99.    The harassment described above was sufficiently severe or pervasive, both individually and cumulatively, to alter the terms and conditions of Plaintiff's employment and create an objectively and subjectively abusive working environment. Defendant knew or should have known of the hostile conditions because Plaintiff repeatedly disclosed her handicap and informed management that working conditions were exacerbating her diabetic episodes, yet Defendant failed to take prompt or effective corrective action and instead escalated the hostile conduct.

100.    The conduct described above was unwelcome and was based upon Plaintiff's disability.

101.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

102.    The hostile work environment unreasonably interfered with Plaintiff's ability to perform her job and adversely affected her emotional and psychological well-being.

103.    Defendant knew or should have known of the hostile work environment because Plaintiff repeatedly disclosed her disability and informed Defendant that the working conditions were causing dangerous blood sugar fluctuations, yet Defendant failed to take prompt or effective corrective action.

104.    Defendant violated the Florida Civil Rights Act, Fla. Stat. § 760.10, by subjecting Plaintiff to discrimination in the terms, conditions, and privileges of her employment because of her disability.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

105.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered emotional distress, humiliation, embarrassment, lost wages, loss of employment benefits, and other compensatory damages.

106.   Defendant acted with malice and with reckless indifference to Plaintiff's rights under the Florida Civil Rights Act.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.   Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b.   Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c.   Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which harasses or creates a hostile work environment on the basis of handicap.

d.   Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e.   Award a monetary judgment representing prejudgment interest;

f.   Award any other compensation allowed by law including attorney's fees (§ 760.11(5));

g.   Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h.   Grant such other and further relief, as the Court deems just and proper.

## COUNT VIII: DISABILITY DISCRIMINATION
### (Failure to Accommodate) – FCRA

107.   The Plaintiff re-adopts each and every factual allegation set forth in paragraphs 1 through 43 as though fully set forth herein.

108.    Plaintiff is an individual with a handicap within the meaning of the Florida Civil Rights Act, Fla. Stat. § 760.10 et seq., in that she has Type 1 Diabetes, a condition that substantially limits major life activities and major bodily functions.

109.    At all times material hereto, Defendant was aware of Plaintiff's disability and her need to safely monitor and treat her blood glucose levels while performing her job duties.

110.    During her employment, Plaintiff informed Defendant that ongoing staffing shortages and the demands of her position were causing dangerous blood sugar fluctuations and interfering with her ability to safely manage her disability.

111.    Plaintiff thereby requested accommodations that would permit her to safely perform the essential functions of her position, including adequate staffing and the ability to attend to medically necessary blood glucose monitoring and treatment.

112.    Defendant failed to engage in the interactive process in good faith and failed to make reasonable accommodations for Plaintiff's known disability.

113.    Defendant could have reasonably accommodated Plaintiff without imposing an undue hardship on its business operations.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

114.    Rather than reasonably accommodating Plaintiff's disability, Defendant permitted the unsafe working conditions to continue and ultimately terminated Plaintiff's employment.

115.    As a direct and proximate result of Defendant's failure to accommodate, Plaintiff suffered lost wages, loss of employment benefits, emotional distress, mental anguish, and other compensatory damages.

116.    Defendant acted with malice and with reckless indifference to Plaintiff's rights pursuant to Fla. Stat. § 760.10.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award the Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of handicap.

d. Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law including attorneys' fees (§ 760.11(5));

g. Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h. Grant such other and further relief as the Court deems just and proper.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

## COUNT IX: RETALIATION –
## FWA § 448.102(3)

117.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 43 above as if set out in full herein.

118.    Florida Statutes provide:

> 448.102 Prohibitions. – An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> *(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.*

119.    Plaintiff objected to and refused to participate in the following activities, policies, and practices of Defendant that are in violation of law, rules, and regulations:

    a. Plaintiff objected to Defendant's misrepresentation to the fire marshal regarding the facility's use of its stove during an annual licensing inspection, a practice in violation of applicable fire safety laws and regulations governing licensed childcare facilities;

    b. Plaintiff objected to Defendant's written policy in its employee handbook prohibiting employees from discussing their wages with one another and threatening immediate dismissal for doing so, a policy in violation of applicable employee rights protections; and

c. Plaintiff objected to violations of DCF adult-to-child ratio requirements at Defendant's facility under Chapter 65C-22, Florida Administrative Code, and the applicable provisions of Sections 402.301 through 402.319, Florida Statutes.

120. Plaintiff raised these concerns with Defendant's management, including senior directors Angela Kinnamon and Kerrie Specht, during the course of her employment beginning in October 2025. Rather than correcting the violations, Defendant's management responded by threatening Plaintiff's employment. On or about October 27, 2025, Defendant's owner threatened to terminate Plaintiff effective immediately if she did not retract her statements regarding quality and safety standards.

121. Following Plaintiff's continued objections and protected activity, Defendant terminated Plaintiff's employment on January 23, 2026, upon her return from illness-related absences.

122. The termination of Plaintiff's employment is a wrongful act in violation of the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102(3).

123. As a direct result of Defendant's unlawful actions, Plaintiff has been damaged.

WHEREFORE, the Plaintiff requests that this Honorable Court:

a. Reinstate the Plaintiff to the same position held before the Defendant's retaliatory action against the Plaintiff, or to an equivalent position;

b. Reinstate the Plaintiff's full fringe benefits and seniority rights;

c.  Award compensation for lost wages, benefits, and other remuneration;

d.  Order payment by the Defendant of the Plaintiff's reasonable costs and attorneys' fees of this action pursuant to Section 448.104, Florida Statutes;

e.  Issue an order prohibiting the Defendant from discharging individuals who object to or refuse to participate in practices which violate Florida law; and

f.  Order such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiff demands trial by jury of all issues so triable as of right.

**Dated: June 25, 2026.**

Respectfully submitted,

**s/ Tanesha W. Blye**
Tanesha W. Blye, Esq. (FBN: 738158)
Email: *attorneyblye@lawyerofjustice.com*
Secondary Email: *legalassistant@lawyerofjustice.com*
THE LAW OFFICES OF T. WALLS BLYE, PLLC
15800 Pines Blvd., Ste 321, Pembroke Pines, FL 33027
66 West Flagler St., Ste. 900, Miami, FL 33130
Main Phone: (786) 796-1814
Legal Assistant's Phone: (305) 209-5779

***Lead Counsel for Plaintiff***