UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIDGETTE HART,

Plaintiff,

v. Case No.: 8:26-cv-1849-NHA

LIL' STARS LEARNING CENTER, INC.,

Defendant.
_______________________________________/

**ORDER**

I grant in part and deny in part Defendant Lil' Stars Learning Center, Inc.'s motion to dismiss the Amended Complaint (Doc. 14). I grant the motion to the extent I dismiss without prejudice Count IX because Plaintiff Bridgette Hart fails to plead a causal connection between her complaints about Defendant's unlawful practices and her termination. Plaintiff may file an Amended Complaint within 14 days. I deny the motion as to the remainder of the counts, but I open a limited discovery period so that Plaintiff can pursue discovery on whether Defendant, either alone or as part of an integrated enterprise, meets the threshold number of employees such that the Americans with Disabilities Act applies to it.

## Background

The Complaint alleges Defendant is a Florida for-profit corporation that "employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, through its operation of multiple childcare facilities in the San Antonio-Dade City-Zephyrhills area of Pasco County, Florida, under common ownership and management." Compl. (Doc. 1) ¶ 7. Plaintiff Bridgette Hart, who suffers from Type 1 diabetes, began working for Defendant as a center director on September 15, 2025. Compl. (Doc. 1) ¶¶ 14, 15. Plaintiff was terminated on January 23, 2026. Compl. (Doc. 1) ¶ 32. Plaintiff's nine claims spring from her employment with and termination from Defendant.

<u>Disability Discrimination Claims</u>

First, in Counts I and V, Plaintiff claims that Defendant discriminated against Plaintiff based on her disability in violation of the Americans with Disabilities Act and the Florida Civil Rights Act. Compl. (Doc. 1) ¶¶ 44–47, 73–83. Again, Plaintiff suffers from Type 1 Diabetes and, as a result, must manage her blood glucose levels. Compl. (Doc. 1) ¶ 14. Plaintiff does so by using a continuous glucose monitor, which she wears on her upper arm, and an insulin pump, which she also wears on her upper arm. Compl. (Doc. 1) ¶ 14. Plaintiff informed Defendant's management of her disability at least twice: on October 2, 2025, when she informed Kerrie Specht, who serves as a senior director over

two of Defendant's locations, and on October 16, 2025, when she informed Angela Kinnamon, a senior director at one of Defendant's locations. Compl. (Doc. 1) ¶ 18.

Plaintiff alleges that, because of her disability, she was subjected to different terms of employment than non-disabled employees. For example, she claims she was subjected to increased scrutiny for her absences. From November 2025 through January 2026, Plaintiff took leave to attend medical appointments for both herself and her son. Compl. (Doc. 1) ¶ 24. Defendant's management came to her work site and made comments to Plaintiff for taking leave, including telling her she "had to be [at work]." Compl. (Doc. 1) ¶ 24. Plaintiff claims that Defendant did not subject non-disabled employees to such scrutiny for their time off. Compl. (Doc. 1) ¶ 40.

Plaintiff further alleges in Counts I and V that she was terminated because of her disability. On January 21, 2026, Plaintiff visited the hospital after suffering from chest pain, tightness, and shortness of breath. Compl. (Doc. 1) ¶ 28. Plaintiff was absent from work on January 21 and January 22, 2026. Compl. (Doc. 1) ¶ 29. She texted management about her absences and was asked to bring in a doctor's note. Compl. (Doc. 1) ¶ 30. When Plaintiff returned to work on January 23, 2026, Defendant terminated her without asking to see her doctors' note. Compl. (Doc. 1) ¶ 32. Defendant's managers (Ms. Kinnamon and Ms. Specht) stated the termination was because Plaintiff

was insubordinate, was never at work, and slept at work. Compl. (Doc. 1) ¶ 33. Plaintiff claims these reasons are pretextual and that she was actually fired due to her disability. Compl. (Doc. 1) ¶ 37.

<u>Disability Retaliation Claims</u>

In Counts II and VI, Plaintiff claims that Defendant retaliated against her, in violation of the Americans with Disabilities Act and the Florida Civil Rights Act. Compl. (Doc. 1) ¶¶ 48–51, 84–95. Plaintiff claims that she "engaged in protected activity by disclosing her disability to Defendant's management, raising concerns about how working conditions were exacerbating her diabetic condition, and taking absences related to her own medical needs and those of her family." Compl. (Doc. 1) ¶¶ 49, 87. But, she claims, after Plaintiff engaged in protected activity, Defendant "subjected Plaintiff to increased scrutiny, criticism regarding her absences, and ultimately terminated her employment on January 23, 2026." Compl. (Doc. 1) ¶¶ 49.

<u>Disability Hostile Work Environment Claims</u>

In Counts III and VII, Plaintiff claims she was subjected to a hostile work environment because of her disability, in violation of the Americans with Disabilities Act and the Florida Civil Rights Act. Compl. (Doc. 1) ¶¶ 52–62, 96–106. Specifically, she states that once, after Defendant's owner (William Gerrell) threatened to terminate her, he asked her how she was feeling, which was meant to reference her diabetes. Compl. (Doc. 1) ¶ 34. And, after she

returned from medical absences, Defendant was critical of her, inquiring repeatedly about her whereabouts and mandating her attendance. Compl. (Doc. 1) ¶ 34.

<u>Failure to Accommodate Disability Claims</u>

In Counts IV and VIII, Plaintiff claims that Defendant failed to accommodate her disability in violation of the Americans with Disabilities Act and the Florida Civil Rights Act. Compl. (Doc. 1) ¶¶ 63–72, 107–116. Plaintiff claims that the demands of her job due to staffing shortages made it difficult for her to manage her diabetes. Compl. (Doc. 1) ¶ 22. Thus, on January 14, 2026 (as well as "on other occasions") Plaintiff said that the job was making it difficult for her to safely manage her diabetes and "Defendant needed to hire additional staff" or give Plaintiff period breaks to monitor her blood glucose, eat meals to manage her blood sugar, and otherwise treat her diabetic episodes. Compl. (Doc. 1) ¶ 25. Plaintiff claims that Defendant ignored her informal requests and that she did not make a more formal request because she feared retaliation. Compl. (Doc. 1) ¶ 26.

<u>Whistleblower Retaliation Claim</u>

Finally, in Count IX, Plaintiff claims that Defendant retaliated against her in violation of the Florida Whistleblower Act. Compl. (Doc. 1) ¶¶ 117–123. In October 2025, shortly after Plaintiff began working for Defendant, Plaintiff raised with Ms. Kinnamon and Ms. Specht concerns that she had about the

facility violating adult-to-child ratio requirements mandated by Chapter 65C-22, Florida Administrative Code, a misrepresentation to a fire marshal about the use of a stove in the facility, and a provision in Defendant's employee handbook that prohibited employees from discussing their wages. Compl. (Doc. 1) ¶¶ 20, 119–20. On October 27, 2025, Mr. Gerrell (an owner) threatened to fire Plaintiff immediately if she did not retract her statements about quality and safety standards. Compl. (Doc. 1) ¶ 21. Plaintiff declined to do so, and was not terminated. Compl. (Doc. 1) ¶¶ 21, 121. Plaintiff claims her January 23, 2026 termination was in retaliation for her complaints about the violations. Compl. (Doc. 1) ¶¶ 121, 122.

**Procedural History**

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) on March 20, 2026. Doc. 14-1. On that form, Plaintiff indicated two forms of discrimination: disability discrimination and retaliation. Doc. 14-1. She alleged that she brought up "safety and security concerns" with management, but management then threatened her termination. Doc. 14-1. She also stated in her charge of discrimination that she "did[ not] request any reasonable accommodation." Doc. 14-1. Finally, she alleged she was terminated after missing work for her child's surgery and for an illness. Doc. 14-1.

Following the EEOC's issuance of Plaintiff's notice of right to sue, Plaintiff filed suit in this Court on June 25, 2026. Doc. 1. In response, Defendant moved to dismiss the Complaint. Doc. 14. Defendant argues, as a threshold matter, that Plaintiff cannot proceed on Counts I through VIII (the Americans with Disabilities Act and Florida Civil Rights Act claims) because Plaintiff does not have enough employees (fifteen) to be covered under the Americans with Disabilities Act and Florida Civil Rights Act. Defendant next moves to dismiss Counts II and VI (the disability-related retaliation counts), because Plaintiff failed to allege any facts relating to disability-related retaliation in the discrimination charge she filed with the EEOC. Similarly, Defendant moves to dismiss Counts III and VII (the hostile work environment claims), because "[a]bsolutely nothing in the charge of discrimination suggests the existence of a hostile environment." Doc. 14 p. 10. And, Defendant moves to dismiss Counts IV and VII (the failure to accommodate claims) on a related theory—that allegations of failure to accommodate are not found in Plaintiff's charge of discrimination. Finally, Defendant argues that Count IX (the whistleblower retaliation claim) should be dismissed, because Plaintiff has failed to plead facts showing that her protected activity caused the adverse action.

## Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not include "detailed factual allegations" in the complaint, the requirement to demonstrate the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

These standards suggest a two-pronged approach for courts evaluating a motion to dismiss a complaint. *See id.* at 678–79; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, a court should "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. While a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the

plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), it need not consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. Nor should it consider "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Second, "where there are well-pleaded factual allegations, [a court should] assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290 (internal quotation marks omitted).

Finally, in considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

## Analysis

### Plaintiff Pleads Facts Indicating that the Defendant had the Requisite Number of Employees

The ADA[1] provides, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

[1] Federal law interpreting the ADA is applicable to claims arising under the FCRA and visa versa. *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1255 (11th Cir. 2007). Thus, my analysis of Plaintiff's ADA claims applies equally to her FCRA claims.

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). "Employer," in turn, is defined as "a person engaged in an industry affecting commerce who has 15 or more employees . . . ." *Id.* § 12111(5)(A). Thus, for the ADA to apply to a defendant employer, that employer must have more than fifteen employees. The Supreme Court has held that the threshold number of employees is "an element of a plaintiff's claim for relief." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516 (2006) (further noting that a district court's jurisdiction does not rest on the number of employees). Thus, an ADA plaintiff must plead in her complaint that her defendant employer has more than fifteen employees.

Here, the Complaint alleges Defendant is a Florida for-profit corporation that "employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, through its operation of multiple childcare facilities in the San Antonio-Dade City-Zephyrhills area of Pasco County, Florida, under common ownership and management." Compl. (Doc. 1) ¶¶ 6, 7. Based upon this allegation, which I understand to mean Defendant operates multiple childcare facilities and

directly employs at least 15 people[2], and in light of Rule 8's requirement that Plaintiff make only a "short and plain statement of [her] claim," I find that Plaintiff has adequately pleaded that Defendant has the requisite number of employees to require compliance with the ADA.

Defendant asks that I take judicial notice of records of the Florida Department of Children and Families, which describe Defendant as having 6 employees on November 5, 2025, and 11 employees on March 9, 2026. Doc. 14-2. But, even if I were to take such judicial notice, snapshots of the number of employees on two dates in the last year is insufficient to establish whether Defendant "employed fifteen (15) or more employees for each working day *in each of twenty (20) or more calendar weeks* in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A) (emphasis added). Thus, this evidence would not change my decision, and I decline to take judicial notice of it.

Nonetheless, the Court notes that whether Defendant employs the requisite number of employees is a threshold issue that will impact Plaintiff's ability to proceed in this Court, given that the Court's jurisdiction rests on Plaintiff's ADA claims. Accordingly, I find it appropriate to open a 75-day

---

[2] I understand from the parties' briefing that this is not the case. *See* Doc. 21 p. 5 (explaining that Plaintiff believes that Defendant employs the requisite number of employees only when considered in combination with related entities). However, at the motion to dismiss stage, my review is limited to the face of the complaint. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).

discovery period for the limited purpose of exploring whether Defendant operates as an integrated enterprise that employees at least 15 employees. At the end of the 75 days, Defendant may file a motion for summary judgment on the issue of the requisite number of employees. Alternatively, at the end of the period, should Defendant decline to file a summary judgment motion, the parties must file a case management report setting forth their proposed case management deadlines.

<u>Plaintiff Exhausted Her Administrative Remedies</u>

Defendant next moves to dismiss Counts II, III, IV, VI, VII, and VIII of the Complaint, arguing that Plaintiff failed to exhaust her administrative remedies as to these claims. Defendant emphasizes that, in her EEOC charge, Plaintiff described raising "safety and security concerns" (rather than concerns related to Defendant's employment practices surrounding disabilities) with Defendant. Doc. 14 pp. 8–10. For this reason, Defendant challenges Plaintiff's right to bring disability-related retaliation claims (Counts II and VI). Doc. 14 pp. 8–10.

Defendant further argues that, because Plaintiff failed to allege facts demonstrating a hostile work environment on her EEOC charge and because she stated on her EEOC charge that she did not seek an reasonable disability accommodation, she should be barred from bringing claims for hostile work

environment (Counts III and VII) and failure to accommodate (Counts IV and VIII). Doc. 14 pp. 10–13.

Plaintiff responds that she checked the boxes on her EEOC charge indicating that she was alleging retaliation (Doc. 21 p. 8) and that the allegations in her Complaint relate to, and grew out of, the allegations in the EEOC charge (Doc. 21 at pp. 11–18).

Before filing suit under the ADA and FCRA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. 42 U.S.C. § 2000e-5(b) (adopting this procedure within Title VII of the Civil Rights Act); 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII to ADA); *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004); Fla. Stat. § 760.11. Thus, a Plaintiff's judicial complaint is limited by the scope of the charge of discrimination she files with the EEOC. *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000). While acts of discrimination not raised in the charge are inappropriate for judicial review, the Eleventh Circuit has cautioned that interpretation of the scope of the EEOC charge should not be overly restrictive. *Gregory*, 355 F.3d at 1279 ("[C]laims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint."). Thus, "courts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460–61 (5th Cir. 1970). The

question is ultimately whether a plaintiff's "complaint was like or related to, or grew out of, the allegations contained in her EEOC charge." *Gregory*, 355 F.3d at 1280

Here, Plaintiff indicated in her EEOC charge that Defendant discriminated against her based on her disability and that the Defendant retaliated against her. Doc. 14-1. Plaintiff indicated that she objected to "safety and security concerns." Doc. 14-1. She further alleged that she suffered from a disability, that working without an accommodation was difficult for her, and that she was terminated after taking time off due to her child's surgery and an illness. Doc. 14-1.

Thus, while Plaintiff failed to specifically allege that she complained about disability discrimination, she nonetheless indicated that "retaliation" was a basis for her charge. Doc. 14-1. Moreover, her complaints about "safety" could easily have been related to her own safety (and thus disability discrimination)—working was unsafe for her, as she was unable to manage her diabetes without an accommodation. Accordingly, the claims for disability-related retaliation in her Complaint (Counts II and VI) "amplify, clarify, or more clearly focus" the allegations in her charge. *Gregory*, 355 F.3d at 1279. Next, while Plaintiff explicitly stated that she did not seek an accommodation and made no claims of a hostile work environment in her charge, such claims are certainly "related to" Plaintiff's other disability discrimination claims, and

may have "grown out" of the allegations. *Gregory*, 355 F.3d at 1279. For example, during the EEOC's investigation, Plaintiff may have learned that, although she did not believe her informal requests for periodic breaks (*see* Compl. (Doc. 1) ¶ 25) qualified as a "request for an accommodation," they, in fact, did.

Thus, I find that Plaintiff has exhausted her administrative remedies as to Counts II, III, IV, VI, VII, and VIII, and decline to dismiss those counts on exhaustion grounds.[3]

<u>Plaintiff Fails to Allege a Claim Under the Florida Whistleblower Act</u>

Defendant finally moves to dismiss Count IX, the Florida Whistleblower Act claim, arguing that Plaintiff failed to allege facts demonstrating any causal connection between Plaintiff's objections to Defendant's unlawful practices and her termination. Doc. 14 pp. 13–14.

The Florida Whistleblower Act provides, in pertinent part, that "an employer may not take any retaliatory personnel action against an employee because the employee has: . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102. In order to raise a successful claim of

---

[3] Defendant fails to argue that the facts in Plaintiff's Complaint are insufficient to state a claim for hostile work environment, failure to accommodate, or disability-related retaliation. Thus, this ruling does not address any such issue.

retaliatory discharge under the Florida Whistleblower Act, a plaintiff must allege that: (1) she engaged in statutorily protected expression (here, objecting to an employer's unlawful practices), (2) she suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity, and (3) there was some causal relation between the events. *Rutledge v. SunTrust Bank*, 262 Fed. Appx. 956, 958 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)) (additional citations omitted).

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."[4] *Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1292 (S.D. Fla. 2020) (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). To the extent the only link proffered between the protected activity and the adverse employment action is "temporal proximity," the temporal proximity must be "very close" to infer causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (holding that a three-month period between the expression and the

[4] "Florida applies the Title VII analysis to retaliatory discharge" under the Florida Whistleblower. *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419 (Fla. 4th DCA 2015).

adverse action was not "very close"). "[A] period as much as one month between the protected expression and the adverse action is not too protracted." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). But a delay of two months or more between the statutorily protected expression and the adverse employment action fails to independently support an inference of causation. *Williams v. Waste Mgmt.*, Inc., 411 F. App'x 226, 230 (11th Cir. 2011). Ultimately, "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon*, 393 F.3d at 1220.

Plaintiff alleges that she raised concerns to Ms. Kinnamon and Ms. Specht about Defendant's legal violations, including adult-to-child ratio requirements, "during the course of employment beginning in October 2025." Compl. (Doc. 1) §§ 119, 120. In response, Defendant's owner (Mr. Gerrell) told Plaintiff to retract her statements and threatened to terminate Plaintiff on October 27, 2025. Compl. (Doc. 1) § 120. Plaintiff alleges that she continued to raise (unspecified and undated) objections (to unknown people) and that Ms. Kinnamon and Ms. Specht terminated her on January 23, 2026. Compl. (Doc. 1) § 121. They gave the following reasons for her termination: Plaintiff was never at work, Plaintiff slept at work, Plaintiff was insubordinate, and they were concerned about Plaintiff's attendance. Compl. (Doc. 1) ¶ 33.

Plaintiff's allegations are insufficient to state a claim for retaliation under the Florida Whistleblower Act. The well-pleaded allegations in Plaintiff's Complaint establish that she complained to Ms. Kinnamon and Ms. Specht about Defendant's unlawful practices in October 2025 and that Ms. Kinnamon and Ms. Specht terminated her approximately three months later, citing reasons unrelated to her complaints.[5] Compl. (Doc. 1) §§ 33, 119–121. Because the only link proffered between the protected activity and the adverse employment action is "temporal proximity," the temporal proximity must be "very close" to infer causation. *Thomas*, 506 F.3d at 1364 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The three-month period between Plaintiff's complaints and her termination is not "very close." *Thomas*, 506 F.3d at 1364.

Accordingly, I grant Defendant's motion to dismiss as to Count IX and dismiss this Count for failure to state a claim.

**Conclusion**

I grant in part, and deny in part, Defendant's Motion to Dismiss.

Specifically, I GRANT Defendant's Motion as to Count IX. The motion is otherwise DENIED.

---

[5] Mr. Gerrell's threat of termination (Compl. (Doc. 1) § 120) does not qualify as an adverse employment action. *Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 149 (11th Cir. 2021).

The parties have 75 days to pursue discovery on the issue of Defendant's number of employees and whether Defendant operates as an integrated enterprise with other employers. At the end of the 75 days, Defendant may file a motion for summary judgment on the issue of the requisite number of employees. Alternatively, should Defendant decline to file a summary judgment motion, the parties must file a case management report on or before January 4, 2027 setting forth their proposed case management deadlines.

Should Plaintiff seek to file an Amended Complaint,[6] she should do so within 14 days.

ORDERED on October 16, 2026.

Natalie Hirt Adams

NATALIE HIRT ADAMS
United States Magistrate Judge

---

[6] Plaintiff requests she be given leave to amend. Such leave should be freely given. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).